FILED

2010 Mar-01  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

KERRIN OSBORNE,                          ]
                                         ]
      Petitioner,                    ]
                                         ]
vs.                                      ]            CV-09-IPJ--RRA-2338-S
                                         ]
WARDEN GRANT CULLIVER and                ]
THE ATTORNEY GENERAL FOR                 ]
THE STATE OF ALABAMA,                    ]
                                         ]
      Respondents.                   ]

## <u>MEMORANDUM OPINION</u>

This is a habeas corpus petition. The magistrate judge entered a report and recommendation recommending that the action be dismissed as barred by the statute of limitations.  Objections have been filed.

In his objections, Osborne continues to argue that the limitations period should be equitably tolled in his case.  Originally, Osborne argued that the limitations period should be equitably tolled because "extraordinary circumstances prevented him from timely filing his petition."  First he claimed that "prison authorities confiscated and destroyed his transcripts and legal documents when transferring [him] from population to segregation."  He clearly stated that "prison officials did not confiscate [his] legal papers until April or May 2009."

In concluding that the confiscation of his transcripts and legal documents, five or six months after the expiration of the limitations period, did not warrant equitable tolling in his case, the magistrate judge stated as follows:

However, the statute of limitations in this case expired on November 17, 2008. Therefore, the fact that his legal papers were confiscated and destroyed five or six months after the limitations period expired could not have had any impact on Osborne's ability to file a timely habeas petition.  FN.

> FN.  Furthermore, the court notes that even if Osborne's legal papers had been confiscated and destroyed prior to the expiration of the limitations period, [that] would not be sufficient to justify equitable tolling since possession of trial transcripts is not necessary to enable a petition to be filed.  *See, e.g.*, *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001) ("Possession of a transcript, however, is not a condition precedent to the filing of [a petition for post-conviction relief]"; *Pacheco v. Artuz*, 193 F. Supp. 2d 756, 760 (S.D.N.Y. 2002) (the § 2244(d)(1)(D) time bar runs "'from the date a petitioner is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim.'"); *Jihad v. Hvass*, 267 F.3d 803, 806 (8th Cir. 2001) ("[L]ack of access to a trial transcript does not preclude a petitioner from commencing post-conviction proceedings and therefore does not warrant equitable tolling"); *Brown v. Cain*, 112 F. Supp. 2d 585, 587 (E.D. La. 2000) (transcript unnecessary to prepare habeas petition).

*Magistrate Judge's Report and Recommendation*, at 5-6.

In his objections, Osborne "admits that a mistake was made by the inmate who is assisting him regarding the date in which prison officials confiscated his legal documents." *Objections*, at 1.

He states that:

> Osborne is currently confined to the segregation unit of the prison, and has to shuttle his legal papers that he receives from the court through other inmates that are being released from segregation to population, to give to the inmate that is assisting him. Osborne has been in segregation since April or May 2009.
> It appears that the inmate confused the dates.  Prison officials confiscated and destroyed Osborne['s] legal papers in August 2008, rather than April or May 2009.
>
> Courts have held that confiscation of legal papers i[s] an extraordinary circumstance warranting equitable tolling.  *See e.g. Valverde vs. Stinson*, 224 F.3d 129, 133-34 (2d Cir. 2000).
> Osborne contacted his family who went to the Circuit Court Clerk's Office and was able to retrieve a copy of the Rule 32 proceedings Osborne filed in the

Circuit Court in October 2009, after receipt of the petition, Osborne forwarded it to the f[e]llow inmate who in turn filed for the Federal Habeas Petition.

Petitioner contends it was impossible for him to file his petition without his legal papers, because Osborne is ignorant of the law and confined to the segregation unit of the prison.  The inmate that is assisting Osborne is in population, and cannot assist me without information regarding what issues have been exhausted, which are Federal Constitutional issues.  The facts to support any claims and the dates that courts ruled on the issues.

*Id.* at 1-2.

First, the court notes that Osborne still maintains that he "has been in segregation since April or May 2009."  *Id.* at 2.  Obviously, the date that Osborne was placed in segregation was five or six months after the expiration of the limitations period on November 17, 2008.  Thus, the fact that he was in segregation cannot be said to have had any effect on his inability to file this petition before the expiration of the limitations period.

Moreover, the Eleventh Circuit Court of Appeals has held that even prison lock-downs and solitary confinement do not qualify as extraordinary circumstances warranting equitable tolling.  *See, e.g., Miller v. Florida*, 307 Fed. Appx. 366 (11th Cir. 2009)(petitioner not entitled to equitable tolling based on close-management status); *Paulcin v. McDonough*, 259 Fed. Appx. 211 (11th Cir. 2007)(transfer to county jail and denial of access to his legal papers and the law library did not constitute extraordinary circumstances); *Sanchez v. United States*, 170 Fed. Appx. 643, 647 (11th Cir. 2006)(prison lockdown, which precluded access to the law library during the time in which he was preparing his motion, not an extraordinary circumstance given that inmate had nearly eleven months prior to lockdown to prepare petition); *Akins v. United States*, 204 F.3d 1086, 1089-90 (11th Cir. 2000)(prison lock-down and misplacement of legal papers did not constitute extraordinary circumstances).  Thus, even if Osborne had been confined to segregation prior to the expiration of

the limitations period, that would not amount to extraordinary circumstance that would justify equitable tolling.

Osborne now claims, however, that his legal papers were "confiscated and destroyed . . . in August 2008, rather than April or May 2009." *Objections*, at 2.  According to Osborne, he "contacted his family who went to the Circuit Court Clerk's Office and was able to retrieve a copy of the Rule 32 proceedings Osborne filed in the Circuit Court in October 2009." *Id*.  Osborne then "forwarded [his legal materials] to the f[e]llow inmate who in turn filed for the Federal Habeas Petition" on November 16, 2009.  *Id*.

Osborne cites *Valverde v. Stinson*, 224 F.3d 129, 133-34 (2d Cir. 2000), in support of his argument that "confiscation of legal papers, i[s] an extraordinary circumstance warranting equitable tolling." *Objections*, at 2.  The petitioner in *Valverde* argued that he was entitled to equitable tolling because "he was prevented from filing on time by a corrections officer's confiscation of his legal papers, including [the sole copy of] his hand-written habeas corpus petition." *Valverde*, 224 F.3d at 132 and 134.  The court in *Valverde* held that "the confiscation of a prisoner's legal papers by a corrections officer shortly before the filing deadline *may* justify equitable tolling and permit the filing of a petition after the statute of limitations ordinarily would have run." *Id.* at 133-34 (emphasis added).  The court went on to explain that, in order to be entitled to equitable tolling, a petitioner must also show that the "extraordinary circumstance" actually prevented him from filing his petition on time, despite the exercise of "reasonable diligence." *Id*. at 134.

Osborne's case differs from *Valverde* significantly in that Osborne makes no claim that he had already prepared his habeas petition when his legal materials were confiscated, and that the petition was among the items confiscated.  In fact, according to Osborne's petition,

he made no attempt to begin preparing his petition until after October, 2009, when his family "retrieve[d] a copy of the Rule 32 proceedings" and provided the copy to Osborne.[1]  This was more than a year after he claims his legal papers were confiscated and destroyed in August, 2008, and almost a year after the limitations period expired on November 17, 2008.

More importantly, the Eleventh Circuit has held that "periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate." *Dodd v. United States*, 365 F.3d 1273, 1283 (11th Cir. 2004), *aff'd, Dodd v. U.S.*, 545 U.S. 353 (2005).  *See also Akins v. United States*, 204 F.3d 1086, 1089-90 (11th Cir.), *cert. denied*, 531 U.S. 971 (2000)(misplacement of legal papers did not constitute extraordinary circumstance); *Vanheiden v. McNeil*, No. 5:07cv212/RH/MD, 2008 WL 2694024 (N.D. Fla. July 7, 2008)(destruction of all legal materials, including almost completed federal habeas petition, as a result of a shakedown, not extraordinary circumstance warranting equitable tolling); *Paulcin v. McDonough*, 259 Fed. Appx. 211 (11th Cir. 2007)(inmate's transfer to county jail and denial of access to his legal papers and a law library did not constitute extraordinary circumstances tolling the limitations period, despite his contentions that he could not file his petition without access to those legal materials and that he exercised diligence in attempting to obtain them); *Smith v. McNeil*, No. 4:08cv40/SPM/EMT, 2008 WL 2756405 (N.D. Fla. July 14, 2008)(allegations of transfers to various institutions and various

---

[1]  He states that:

> it was impossible for him to file his petition without his legal papers, because  [he] is ignorant of the law and confined to the segregation unit of the prison.  The inmate that is assisting Osborne is in population, and cannot assist me without information regarding what issues have been exhausted, which are Federal Constitutional issues.  The facts to support any claims and the dates that courts ruled on the issues.

*Objections*, at 2.

units within on institution over a period of one year, assignment as a medical orderly and to a "modality program" for several months during that time, and the lack of access to the law library and other legal resources during that time do not constitute extraordinary circumstances).

Even if the confiscation and destruction of Osborne's legal documents in August, 2008, could be considered to be an "extraordinary circumstance," he has not shown that it would have prevented him from filing his petition on time if he had acted diligently.  Osborne has not shown anything that would arguably constitute an appropriate degree of diligence in pursing his remedy in federal court. First, he allowed 299 days of the one-year limitations period to elapse before even filing a collateral petition in state court.  He has offered nothing to indicate that he acted diligently during this time period.  When the limitations period began to run again on September 12, 2008, when the Rule 32 proceedings ended, Osborne had only 66 days left in which to file his federal petition.  He claims that his legal papers were taken from him in August, 2008, shortly before the end of his Rule 32 proceedings.  Yet, his only attempt at getting copies of his records from state court was to ask his family to get the records.  He does not indicate when he first asked his family to get the records, but does state that they got the records in October, 2009, almost a year after the expiration of the limitations period.

Osborne further states that he could not possibly have filed his petition without his legal papers because he is ignorant of the law and because the inmate who assisted him could not assist him without access to his legal papers.  Osborne implies that he could not have spoken directly to the inmate law clerk about the facts of his case because he was in segregation; however, he was not in segregation prior to the expiration of the limitations period.  Furthermore, "ignorance of the law generally does not warrant the application of equitable tolling." *Emanuel v. Secretary, Florida Dept.*

*of Corrections*, No. 8:09-CV-1907-T-30TGW, 2010 WL 571939 (M.D. Fla. Feb. 16, 2010), *citing*

*Howell v. Crosby*, 415 F.3d 1250, 1252 (11th Cir. 2005).  Osborne  has offered nothing to indicate

why he could not have prepared a habeas petition himself or consulted in person with an inmate law

clerk about his petition during the period from September 12, 2008, to November 17, 2008, in order

to have prepared a petition on time.  His alleged lack of access at the time to his legal material would

not have prevented Osborne "from filing a petition with the court simply declaring that his

knowledge and recollection of all necessary facts or arguments may not be complete in order to meet

the one-year statue [sic] of limitations." *Smith v. Florida*, No. 6:06-cv-1761-Orl-31KRS, 2007 WL

1174028, *3 (M.D. Fla. April 18, 2007), *quoting Conerly-Rothwell v. Walter*, No. C05-5098RBL,

2006 WL 1009248, *6 (W.D. Wash. 2006).

Osborne further objects to the magistrate judge's finding that he was not diligent in

attempting to learn of the outcome of his Rule 32 petition in state court.  In his petition, Osborne

claimed that the limitations period should be equitably tolled "based on the fact that he did not

receive [n]otice of the Alabama Supreme Court's [i]ssuance of the Certificate of Judgement [sic]

until sometime in September 2009, merely a year after the Court rendered its judgement [sic]."  The

magistrate judge found as follows:

> A lengthy delay between the issuance of a necessary order and
> an inmate's receipt of it might provide a basis for equitable tolling if
> the petitioner has diligently attempted to ascertain the status of that
> order and if the delay prevented the inmate from filing a timely
> federal habeas corpus petition. *See Knight v. Schofield*, 292 F.3d 709
> (11th Cir. 2002); *see also Woodward v. Williams*, 263 F.3d 1135,
> 1143 (10th Cir. 2001) ("[A] prisoner's lack of knowledge that the
> state courts have reached a final resolution of his case can provide
> grounds for equitable tolling if the prisoner has acted diligently in the
> matter."); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000)

(explaining that a delay in receiving notice of denial of appeal might render equitable tolling appropriate).

*Drew v. Department of Corrections*, 297 F.3d 1278, 1288 (11th Cir. 2002).

On September 12, 2008, the Alabama Court of Criminal Appeals denied Osborne's petition for a writ of certiorari and issued a certificate of judgment, bringing his Rule 32 proceedings to a close.  Osborne claims that he did not receive the certificate of judgment until a year later.  However, Osborne makes no claim that he ever made any attempt to contact the court to determine the outcome of his petition.  Equitable tolling is not warranted unless Osborne is able to establish that he acted diligently in attempting to learn of the outcome of the petition.   In determining that the petitioner in *Drew* had not established that he acted diligently, the court found as follows:

> Even assuming that he did not receive the district court's order until February 1996, Drew has provided no evidence supporting his claim that he repeatedly attempted to ascertain the status of his case from the Clerk's office, a burden necessary to sustaining his claim of extraordinary circumstances.   Indeed, far from depicting diligent efforts to learn about the case, the mail record that comprises Drew's entire evidentiary proffer actually cuts against his claim, as it reflects only one letter sent to the Clerk's office.  And even that one letter was not mailed until January 30, 1996, a full sixteen months after the petition was filed and only three weeks before he received a copy of the order.   We think that one letter is plainly an insufficient evidentiary foundation to support Drew's claim of diligence, let alone to establish that the trial court clearly erred in finding Drew dilatory.

> Aside from the unavailing mail log, Drew provides no additional information about his alleged attempts, including copies of the letters, the dates on which they were sent, or any description of their contents.  Furthermore, he does not claim to have taken any steps other than writing letters, such as calling the Clerk's office by telephone or seeking help from people with the ability to go to the court personally, including the brother and aunt who had helped him with other aspects of his post-conviction challenges.  In the absence of any showing of his own diligence, Drew cannot be entitled to the rare and extraordinary remedy of equitable tolling. *See, e.g., Helton*, 259 F.3d at 1313-14 (denying equitable tolling to inmate whose counsel misinformed him about AEDPA time limit and whose prison library allegedly lacked copies of relevant law in light of petitioner's failure to state any "independent efforts" that he made to ascertain

deadline).   With nothing more than a simple allegation in a
memorandum before her, we cannot conclude that the magistrate
judge clearly erred in finding that Drew had not been diligent.
Similarly, the district court did not clearly err in adopting the Report
and Recommendation.

*Drew*, 297 F.3d at 1288-89 (footnote omitted).

Osborne makes no claim that he ever attempted, in any way, to contact the
Alabama Supreme Court to determine the outcome of his petition.   Moreover, he had
already allowed 299 days of the limitations period to run before ever filing his Rule
32 petition.   In light of the foregoing, the magistrate judge concludes that Osborne
has failed to establish the existence of an extraordinary circumstance sufficient to
justify equitable tolling.   Moreover, he has offered nothing to establish diligence on
his part.   *Drew*, 297 F.3d at 1287-89.   Therefore, this is not a proper case for
equitable tolling.

*Magistrate Judge's Report and Recommendation*, at 6-7.

Osborne states the following in his objection:

Petitioner objects to the Magistrate finding that Osborne['s] lack of notice of
the State's Supreme Court['s] denial of his petition for Certiorari Review, was not
extraordinary warranting equitable tolling.
The Magistrate found that Osborne has not established diligen[ce] in an
attempt to contact the Supreme Court to learn the outcome of the Petition.

Osborne submits that as previously mentioned he is ignorant of the law, and
has relied on fellow inmates to assist and navigate him through the Court system
since his direct appeal was completed.   The State Court was sending him orders, and
he would in turn give them the orders [sic] to the fellow inmate that [sic] was
assisting him at the time.   However, when Osborne was transferred to the segregation
unit, he stop[ped] receiving the Court's order[s], it was not until Osborne talk[ed]
with the current inmate that he inquired about the status of the case, and found out
that his petition ha[d] been denied.

*Objections*, at 3.   However, as the court previously mentioned, ignorance of the law  generally does

not warrant the application of equitable tolling.   Additionally, "[a]ttorney negligence, even gross

negligence, does not warrant equitable tolling."   *Perkins v. Ammons*, No. 09-13694, 2010 WL

537824 (11th Cir. February 17, 2010), *quoting Melson v. Allen*, 548 F.3d 993, 1001 (11th Cir. 2008),

*cert. denied*, 130 S. Ct. 254, (2009). It follows that any negligence on the part of his inmate assistant would not warrant equitable tolling. Therefore, to the extent he seems to blame the delay in learning that his Rule 32 proceedings had ended on his inmate assistant, equitable tolling is still not warranted.

Osborne cites *Knight v. Schofield*, 292 F.3d 709 (11th Cir. 2002), to support his claim that equitable tolling is available when a petitioner is not informed of the disposition of his case. *Knight* held that the petitioner was entitled to equitable tolling where the state court had assured him that it would contact him as soon as a decision was made, but the notice was sent to the wrong person, *and* the petitioner demonstrated diligence in inquiring about the status of his case when the court failed to contact him after fifteen months. *Knight*, 292 F.3d at 710-711. The court in *Knight* noted, however, that a habeas petitioner is not necessarily entitled to "equitable tolling until he receives notice." *Id*. at 711.

In *Logreira v. Secretary for the Department of Corrections*, 161 Fed. Appx. 902 (11th Cir. 2006), the petitioner also argued that he met the requirements for equitable tolling set forth in *Knight* because he had no control over the court's failure to notify him of the outcome of his state petition, and he acted with diligence in repeatedly inquiring about the outcome of the petition. In affirming the denial of Logreira's petition, the court found as follows:

> Here, Logreira began contacting the Florida appellate court to inquire about the status of his state habeas petition nine months sooner than the petitioner in *Knight* initiated his inquiries to the Georgia Supreme Court. *Knight*, 292 F.3d at 710-11. However, unlike in *Knight*, here there was no personal assurance indicating that Logreira would be contacted at the conclusion of his case. *Cf. Knight*, 292 F.3d at 711. Moreover, while Logreira provided evidence of his repeated attempts to contact the Florida appellate court through mail, he did not show that he took any steps, other

than mailing letters, to gain information concerning his petition. *Drew*, 297 F.3d at 1289. Finally, after he learned that his state habeas application had been denied, Logreira waited six months to file the instant § 2254 petition and he provides no explanation, let alone a causal connection, between his delayed receipt of the Third DCA's decision and his untimely filing of his § 2254 petition. *Cf. Lawrence*, 421 F.3d at 1226-27 (refusing to invoke equitable tolling where habeas petitioner did not establish "a causal connection between his alleged mental incapacity and his ability to file a timely petition").

On this record, we cannot find clear error in the district court's finding that Logreira failed to meet his burden of showing that he exercised sufficient due diligence in inquiring with the Florida appellate court concerning the disposition of his state habeas petition. Accordingly, we will not reverse the district court's decision on this basis and affirm the denial of habeas relief. *See Drew*, 297 F.3d at 1289-90.

*Logreira*, at 904.

As in *Logreira*, the petitioner here received no personal assurance that he would be contacted at the conclusion of his state court proceedings.[2] Furthermore, in his objections, Osborne claims that "it was not until Osborne talk[ed] with the current inmate that he inquired about the status of the case, and found out that his petition ha[d] been denied." *Objections,* at 3. Clearly, Osborne failed to act with sufficient diligence in inquiring about the status of his case to warrant equitable tolling. *Drew*, 297 F.3d at 1287-89.

Finally, Osborne objects to the magistrate judge's finding that he failed to establish that he is actually innocent. The magistrate judge found as follows:

In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court elaborated on the fundamental miscarriage of justice exception and the necessity of showing innocence. To meet this exception, the petitioner "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. The standard focuses on the *actual* innocence of the petitioner. As the Supreme Court explained:

---

[2] Osborne has not alleged, much less proven, that he received such an assurance.

11

Instead, the emphasis on "actual innocence" allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial.  Indeed, with respect to this aspect of the *Carrier* standard, we believe that Judge Friendly's description of the inquiry is appropriate: the habeas court must make its determination concerning the petitioner's innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial."

*Id.* at 327.  (*Quoting* Friendly, *Is Innocence Irrelevant? Collateral Attack on Judgment*, 38 U.Chi.L.Rev. 142, 160 (1970)).  To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial.  *Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002).

In support of his claim of actual innocence, Osborne argues that he is "actually innocent of the charge of murder because there is credible evidence that petitioner did not fire the weapon that killed [the] victim."  He adds that the "State's case was pure[ly] circumstantial and was based on the [u]ncorroborated testimony of two accomplices" and that there was "no evidence presented at trial that these witnesses were accomplices, and had such been presented, it is more likely that petitioner would not have been convicted."

However, in order to establish that he is actually, factually innocent, Osborne must provide new, reliable evidence, establishing that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  Osborne has not identified the "credible evidence" he claims to have to prove that he did not fire the weapon that killed the victim in this case.  Nor has he claimed that the unidentified evidence is new.  Further, it is clear that he would have known at the time of trial, that some of the witnesses were his  accomplices, so this "evidence" is not new either.  Osborne's conclusory allegations that he is actually innocent are insufficient to meet the *Schlup* test.

*Magistrate Judge's Report and Recommendation*, at 8-9.

In his objection, Osborne

reiterate[s] his claim of innocence, and maintains that he met the *Schlup vs. Delo*, 513 U.S. 298 (1995) standard, and Magistrate should have directed that the respondent produce Osborne['s] Trial Transcripts for an independent review of the evidence.

*Objections*, at 4. However, Osborne has still not identified any "reliable evidence not presented at trial" that makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Thus, he has still failed to meet the requirements of the *Schlup* test.

Osborne has failed to establish that extraordinary circumstances beyond his control prevented him from filing a timely petition in this court.  Likewise, he has not shown that he acted with diligence, particularly in light of the fact that he allowed 299 days of the one-year limitations period to elapse before he filed his Rule 32 petition in state court.   Therefore, he is not entitled to equitable tolling.  Furthermore, he has failed to establish that he is actually innocent.  The limitations period expired on November 17, 2008.  Osborne did not file his petition in this court until November 16, 2009, almost a year after the expiration of the limitations period.  Therefore, his petition is untimely and it is due to be dismissed because it is barred by the statute of limitations.

The court has considered the entire file in this action, including the report and recommendation and the petitioner's objections to the report and recommendation, and has reached an independent conclusion that the report and recommendation is due to be adopted and approved.

Accordingly, the court hereby adopts and approves the findings and recommendation of the magistrate judge as the findings and conclusions of the court.  This habeas petition is due to be dismissed.  An appropriate order will be entered.

Done this 1st day of March, 2010.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

13